**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------
                                :
AARON BELLAMY,                  :
                                :   Civil Action No. 13-7783(NLH)
          Petitioner,           :
                                :
     v.                         :   **OPINION**
                                :
J. HOLLINGSWORTH, et al.,       :
                                :
          Respondents.          :
                                :
---------------------------------

**APPEARANCES:**

Aaron Bellamy
FCI Fort Dix
P.O. Box 2000
Fort Dix, NJ  08640
     Petitioner pro se

David Vincent Bober
Assistant U.S. Attorney
402 East State Street
Trenton, NJ  08608
     Counsel for Respondents


**HILLMAN**, District Judge

     Petitioner Aaron Bellamy, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2241,[1] challenging the results of a prison disciplinary proceeding.  The Respondents are Warden J. Hollingsworth and the Federal Bureau of Prisons.

Based on the submissions of the parties, this Court has determined that Petitioner is not entitled to relief.

## I.   BACKGROUND

Petitioner is presently confined pursuant to a judgment entered in the U.S. District Court for the Middle District of Florida.  See U.S. v. Bellamy, Crim. No. 05-0188 (M.D. Fla.). The facts underlying his Petition are undisputed.

In November 2012, in anticipation of his release, Petitioner was transferred to Toler House, a Residential Re-Entry Center ("RRC").  On April 10, 2013, Incident Report No. 2434101 was issued, charging Petitioner with Use of Alcohol, contrary to Code 112.[2]  More specifically, the Incident Report states:

---

[1] Section 2241 provides in relevant part:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.  ...
>
> (c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

[2] Prohibited acts and sanctions are set out in 28 C.F.R. § 541.3.

> On Wednesday, April 10, 2013 at approximately 11:46am resident Bellamy, Aaron # 20620-058 arrived to the facility and was ordered to submit to a random Breathalyzer test.  BELLAMY blew a positive breathalyzer yielding .043% Blood Alcohol Content.  BELLAMY was questioned by this writer as to whether he was drinking and he stated "I wasn't drinking.  I brushed my teeth this morning."  BELLAMY was ordered to have a seat and informed a confirmation test would be conducted in 15 minutes.  He was also informed he would be pulled from home detention.  BELLAMY then stated "what about my kid who is in school and my sick father?  I am not blowing into that thing again!  F[---] this!  Call the Marshals I am not staying at Toler House!"  BELLAMY was then called into the Program Director's Office.
>
> At 12:07PM a confirmation test was conducted and yielded a positive result of .039% Blood Alcohol Content.  BELLAMY is in violation of code 112, Use of any Narcotics, Marijuana, Drugs, Alcohol, Intoxicants, or related paraphernalia not prescribed for the individual by a medical staff.

(Answer, Moran Decl., Ex. 5, Incident Report No. 2434101, ¶ 11.)

This Incident Report was delivered to Petitioner the same day at 1:01 p.m.  Later that same day, at 4:55 p.m., after being advised of his right to remain silent, Petitioner offered the following statement, as recorded on the Incident Report:

> "I am emotionally upset.  I need more help."  "I need more help with my substance abuse problem, I overwhelmed myself and I just need some help."  "I am taking care of my sick father, I took him to the doctor yesterday and he is getting worst [sic] off than what he was."  "My father has diabetes, he lost a lot of weight, and he only weigh[s] 127 lb, I have his prescriptions that I need to get filled he needs his medications."  "I am now responsible for my son; his mother is in school and was having trouble taking care of him in North Carolina."  "I have been doing well for the last 5 months, does that count, and I just need more help."  "I just enrolled my son in school;

3

> he is 7 I do not want to let him down."  "It will hurt me more to go back to prison and something happen to my father, if he passes away, I would not know how to handle it."  "I would love to attend AA meeting everyday if I could, but we are not allowed for accountability issues."  "I know I messed up but this was the first time and I learned my lesson, and will not do it again."  "I have too many people depending upon me; I will find a sponsor and call them to talk with."  "I am the only provider for my father, I help him with all his medications, there is no one else to help him, he is unable to do anything on his own."  "I can not afford to put him in a nursing home."
>
> Mr. Bellamy appeared very concerned and remorseful during the investigations.

(Answer, Moran Decl., Ex. 5, Incident Report No. 2434101, ¶ 14.)

The Incident Report was referred to the Center Discipline Committee ("CDC") for a hearing the next day.[3]  Petitioner requested a staff representative.  Petitioner also requested that three witnesses be permitted to testify.  Petitioner indicated that Mr. Ron[4] could testify to "Everything I have been going through, the issues I am trying to cope with."  He further indicated that a Mr. Brown could testify that Petitioner "[w]as sent to a lady in Montclair for an evaluation for Substance Abuse, and I was cleared."  Finally, Petitioner indicated that his father could testify that, "I have been taking care of him

---

[3] Petitioner waived his right to 24-hour advance notice. (Answer, Moran Decl., Ex. 7.)

[4] Mr. Ron was affiliated with the Transitional Drug Abuse Treatment program in which Petitioner participated at the RRC.

4

and there is no one else to take care of him.  My family is out [of] state and can not afford a nursing home."  (Answer, Moran Decl., Ex. 6, Notice of CDC Hearing.)

At the CDC hearing, Petitioner appeared personally with his staff representative, Mr. Cooper, and admitted the charge.  He made no further statement in his defense, declaring that the statement he had made during the investigation was sufficient.  An investigator contacted Petitioner's witnesses, two of whom provided statements.  The CDC considered the witnesses' statements to the investigator but did not call the witnesses because they could not provide evidence that Petitioner did not drink alcohol.  (Answer, Moran Decl., Ex. 8, CDC Report.)

Based upon the hearing, the CDC found that Petitioner had committed the charged violation.  In making this finding, the CDC relied upon the following specific evidence:  Petitioner's two breathalyzer test results, his admission that he had used alcohol, and his statement to the investigator.  The CDC recommended the following sanctions:  that Petitioner be deemed a program failure, that he lose 25 percent good conduct time, and that he continue to receive alcohol treatment.  The CDC stated that the reason for the sanction was that Toler House has a zero tolerance policy regarding the use of alcohol and that Petitioner knowingly violated the policy.  (Answer, Moran Decl., Ex. 8, CDC Report.)  The recommendation was forwarded to a

Bureau of Prisons Discipline Hearing Officer ("DHO") at the Metropolitan Detention Center in Brooklyn, New York, who reviewed the CDC report and supporting evidence, and who imposed the following sanctions: removal from the RRC, 40 days loss of good conduct time, and 60 days loss of non-vested good conduct time. (Answer, Moran Decl., Ex. 8, § X; Ex. 9.) Although Petitioner had been removed from the RRC and placed at the Metropolitan Detention Center, he did not appear before the DHO there. Following the imposition of sanctions by the DHO, Petitioner was transferred to the Federal Correctional Institution at Fort Dix, New Jersey. He exhausted his administrative remedies and then filed this Petition.

Here, Petitioner asserts that his due process rights have been violated because he was not permitted to appear personally or through a staff representative before the DHO, because the DHO did not hear from Petitioner's witnesses in person, because the DHO did not separately state the evidence upon which he relied in imposing sanctions, and because the DHO failed to make a separate statement as to the reasons for the sanctions imposed, which exceeded those recommended by the CDC.[5]

## II. LEGAL STANDARD

---

[5] Petitioner does not contend that the sanctions imposed exceed those permitted by the applicable regulations.

6

"Habeas corpus petitions must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994). A petition must "specify all the grounds for relief" and must set forth "facts supporting each of the grounds thus specified." See Rule 2(c) of the Rules Governing § 2254 Cases in the U.S. District Courts (amended Dec. 1, 2004) ("Habeas Rules"), made applicable to § 2241 petitions through Rule 1(b) of the Habeas Rules.

Nevertheless, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

### III.  ANALYSIS

A.  Jurisdiction

A habeas corpus petition is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement, Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973), including challenges to prison disciplinary proceedings that affect the length of confinement through deprivation of good time credits,

7

Muhammad v. Close, 540 U.S. 749 (2004) and Edwards v. Balisok, 520 U.S. 641 (1997). See also Wilkinson v. Dotson, 125 S.Ct. 1242 (2005).

B.   Petitioner's Claims

Convicted and sentenced prisoners retain the protections of the Due Process Clauses of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Haines v. Kerner, 404 U.S. 519 (1972); Wilwording v. Swenson, 404 U.S. 249 (1971). Such protections are, however, "subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed. ... In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Wolff, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or from state or federal law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999). Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to good time

8

credits as a sanction,[6] "the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." Wolff, 418 U.S. at 557. See also Pappas v. Allenwood, No. 13-3608, 2013 WL 6439655, *2 (3d Cir. Dec. 5, 2013) ("Federal prisoners have a liberty interest in statutory good time credits.") (citing Wolff, 418 U.S. at 557).

Thus, a prisoner is entitled to an impartial disciplinary tribunal, Wolff, 418 U.S. at 570-71, excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body," Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974).

To comply with the requirements of the Due Process Clause, prison officials also must provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call

---

[6] The Constitution itself does not guarantee good time credits for satisfactory behavior in prison. Congress, however, has provided that federal prisoners serving a term of imprisonment for more than one year, other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of their sentence based upon their conduct. See 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20.

witnesses and present documentary evidence in his defense,[7] and (3) a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action. Wolff, 418 U.S. at 564-66. Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings. Id. at 569-70. Where an illiterate inmate is involved, or the complexity of the issue makes it unlikely that the inmate involved will be able to collect and present the evidence necessary for an adequate comprehension of the case, the prisoner should be permitted to seek the aid of a fellow inmate or appropriate staff member. Id. at 570.

---

[7] The right to call witnesses and present evidence is not unfettered. Prison officials may limit the inmate's presentation for reasons of relevance, necessity, or undue hazard to institutional safety or correctional goals. See Wolff, 418 U.S. at 566-67.

   Prison officials must justify their refusal to call witnesses requested by the prisoner, but such justification need not be presented at the time of the hearing. To the contrary, the explanation for refusal to call witnesses requested by the prisoner may be provided to the court if the deprivation of a liberty interest is challenged because of that claimed defect in the hearing. See Ponte v. Real, 471 U.S. 491 (1985). "{P]rison officials may deny a prisoner's request to call a witness in order to further prison security and correctional goals. ... [T]he burden of persuasion as to the existence and sufficiency of such institutional concerns is borne by the prison officials, not by the prisoners." Grandison v. Cuyler, 774 F.2d 598, 604 (3d Cir. 1985).

In addition, due process requires that findings of a prison disciplinary official, that result in the loss of good time credits, must be supported by "some evidence" in the record. <u>Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill</u>, 472 U.S. 445, 454-56 (1985).[8] More specifically,

> [b]ecause the written statement mandated by <u>Wolff</u> requires a disciplinary board to explain the evidence relied upon, recognizing that due process requires some evidentiary basis for a decision to revoke good time credits will not impose significant new burdens on proceedings within the prison. Nor does it imply that a disciplinary board's factual findings or decisions with respect to appropriate punishment are subject to second-guessing upon review.
>
> We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. We decline to adopt a more stringent evidentiary standard as a constitutional requirement. Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of

---

[8] The due process requirements of <u>Wolff</u>, as they relate to federal prisoners, have been codified in the Code of Federal Regulations at 28 C.F.R. § 541.1 et seq. <u>See</u>, <u>e.g.</u>, 28 C.F.R. § 541.5 (Discipline Process); 28 C.F.R. § 541.7 (Unit Discipline Committee (UDC) review of the incident report); 28 C.F.R. § 541.8 (Discipline Hearing Officer (DHO) hearing).

11

> evidence that might be insufficient in less exigent circumstances.  The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.  Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

Superintendent v. Hill, 472 U.S. at 455-56 (citations omitted).

Finally, the "harmless error" rule applies to federal court review of prison disciplinary actions.  See Elkin v. Fauver, 969 F.2d 48 (3d Cir.), cert. denied, 506 U.S. 977 (1992); Powell v. Coughlin, 953 F.2d 744 (2d Cir. 1991); Pressley v. Blaine, 544 F.Supp.2d 446, 457 (W.D. Pa. 2008).

In its Program Statement 7300.09, Community Corrections Manual, the Bureau of Prisons ("BOP") provides for a slightly modified procedure for prisoners confined to a Residential Re-Entry Center in anticipation of release.  That is, for RRC prisoners, the in-person disciplinary hearing is conducted before the RRC's Center Disciplinary Committee.  The recommendation of the CDC is forwarded to the Disciplinary Hearing Officer for review, certification that the CDC procedure complied with BOP policy and the Wolff requirements, and imposition of sanctions for any infractions found to be supported by the evidence, all as reflected by the DHO's signature on the CDC report.  See generally Program Statement 7300.09, Community Corrections Manual, Chapter 5.7.  See also

12

Sierra v. Scism, Civil No. 10-1885, 2010 WL 5553955, *2 (M.D. Pa. Dec. 14, 2010) (outlining the CDC/DHO procedure), report and recommendation adopted, 2011 WL 65665, (M.D. Pa. Jan. 7, 2011).

Reviewing courts have consistently held that this bifurcated procedure meets the Wolff standard. See, e.g., Manfredi v. U.S., Civil No. 12-1905, 2012 WL 5880343, *7 (D.N.J. Nov. 20, 2012) (collecting cases); Rini v. Nash, Civil No. 05-2202, 2005 WL 2033689, *3 (D.N.J. Aug. 22, 2005) ("Wolff does not mandate that [p]etitioner be granted two hearings[,] one before the CDC and one before the DHO."). This Court agrees.

Petitioner admitted his use of alcohol, as confirmed by the two breathalyzer tests. The decision to deny a personal appearance by the requested witnesses was justified by the fact that their testimony would not have been relevant to the question whether Petitioner was guilty of the infraction. In any event, the CDC obtained statements from two of Petitioner's witnesses and considered them. Petitioner was not prejudiced by the CDC decision not to call the witnesses personally. There was ample evidence to find Petitioner guilty of the infraction. By his certification, the DHO concurred that the finding of guilt was supported by the evidence. That evidence included the information Petitioner considers so vital -- his efforts at rehabilitation, the stresses he was under, and the needs of his father and son. The fact that the DHO imposed a greater

sanction than that recommended by the CDC did not compel a second in-person hearing.  See, e.g., Dickerson v. Thomas, Civil No. 11-0744, 2011 WL 3704264, *4 (D.Or. Aug. 22, 2011); Stevens v. Thomas, Civil No. 11-0790, 2011 WL 3563131, *4 (D.Or. Aug. 10, 2011); Ramos v. Gilkey, 1997 WL 201566 (N.D. Ill. Apr. 17, 1997).  Petitioner received all the process Wolff requires.  To the extent there was error in the proceedings, any such error was harmless.  Petitioner is not entitled to relief.

## IV. CONCLUSION

For the reasons set forth above, the Petition will be denied.  An appropriate order follows.


At Camden, New Jersey                *s/Noel L. Hillman*
                                     Noel L. Hillman
                                     United States District Judge

Dated:  February 21, 2014